## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**JOHNNIE ROCHELL, JR.**                                                              **PLAINTIFF**

**V.**                          **CASE NO. 5:16-CV-5093**

**DETECTIVE CODY ROSS**                                         **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Currently before the Court is Defendant Detective Cody Ross's second Motion for Reconsideration (Doc. 100) and Brief in Support (Doc. 101) concerning the Court's decision to deny his request for summary judgment on Plaintiff Johnnie Rochell, Jr.'s false-imprisonment claim.   The Motion is **GRANTED**, and the false-imprisonment claim is dismissed with prejudice.

## I.   BACKGROUND

On October 25, 2017, the Court issued an order (Doc. 69) denying Detective Ross's request for summary judgment as to Mr. Rochell's claims for false imprisonment and excessive force. On November 21, 2017, Detective Ross filed his first motion for reconsideration of the Court's order—but only with respect to the false-imprisonment claim.   (Docs. 76 & 77).   On November 22, he appealed the Court's summary judgment order to the Eighth Circuit.   (Doc. 79).   In the meantime, this Court considered his first motion for reconsideration and denied it on December 1, 2017. (Doc. 82).   It appears Detective Ross intended to appeal all issues in the Court's summary judgment order, including the false-imprisonment claim; however, he failed to properly file an amended notice of appeal after his first motion for reconsideration was denied.   As a result, the

1

Court of Appeals determined that the false-imprisonment claim was "not properly before [the Court]" and did not consider it.   (Doc. 83-1, pp. 3–4).   The excessive-force claim on the other hand was substantively reviewed by the Eighth Circuit, and this Court's decision to preserve that claim for trial was affirmed.

After the Eighth Circuit issued its mandate on the interlocutory appeal, Detective Ross filed a petition for writ of certiorari with the United States Supreme Court (Doc. 93), which was ultimately denied.   (Doc. 94).   The matter finally returned to this Court and was set for trial.   After that, Detective Ross filed the instant Motion for Reconsideration. The Motion asks, once again, that the Court reconsider its decision to preserve the false-imprisonment claim for trial.   Detective Ross's arguments now reflect Judge Steven M. Colloton's concurring opinion in the interlocutory appeal.   *See* Doc. 83-1, pp. 4–6. Judge Colloton had agreed with the majority that Detective Ross was appropriately denied qualified immunity on the excessive-force claim; however, he went on to suggest in dicta that perhaps this Court had erred in preserving the false-imprisonment claim for trial, even though that claim had not been properly appealed and thus was not before the appellate court for review.   His observations as to the false-imprisonment claim were as follows:

> The district court also denied Ross qualified immunity on Rochell's Fourth Amendment claim for false imprisonment, but Ross did not appeal that issue, and this court therefore does not resolve it. Because Ross's stated reason for arresting Rochell was his alleged unlawful possession of a firearm, the district court seemed to believe that Ross could not rely on Rochell's undisputed commission of a disorderly conduct offense to justify arresting and detaining him. R. Doc. 69, at 21–22. Under the Fourth Amendment . . . "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *see Carpenter v. Gage*, 686 F.3d 644,

2

649 (8th Cir. 2012) ("That the deputies' subjective reason for arresting Carpenter may have been different does not invalidate the arrest."). This proposition maybe considered further as the case proceeds.

*Id.* at pp. 5–6.

The Court has not previously considered the holding of *Devenpeck v. Alford* in either its summary judgment order or in its order denying Detective Ross's first motion for reconsideration. But now that these legal arguments have been formally presented to the Court in the form of a second motion for reconsideration, the time is ripe to address these issues head on. As this Opinion will explain, the Court believes that the rule articulated in *Devenpeck* lacks nuance and that its strict application results in a miscarriage of justice in the case at bar; nevertheless, the Court finds itself constrained to apply *Devenpeck*, in combination with the holding in *Heck v. Humphrey*, 512 U.S. 47, 486–87 (1994), to conclude that Mr. Rochell's false-imprisonment claim must be dismissed.

## II.   LEGAL STANDARD

A motion for reconsideration under Federal Rule of Civil Procedure 60(b)(6) provides that a party may be relieved from an order of the Court for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(1) & (6). Further, "[w]hen a district court is convinced that it incorrectly decided a legal question in an interlocutory ruling, the district court may correct the decision to avoid later reversal." *Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 522 (8th Cir. 1992). When reconsideration of an order on summary judgment is at issue, the Court must analyze whether "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts

on summary judgment must be viewed in the light most favorable to the non-movant, who must be given the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998).

## III.    DISCUSSION

There is no dispute of fact that at the time Detective Ross arrested Mr. Rochell, and later, when he ordered that Mr. Rochell be transported to the Washington County Detention Center ("WCDC") for incarceration, Detective Ross claimed to be under the mistaken belief that Mr. Rochell was a felon in illegal possession of a firearm.   That was the sole reason Mr. Rochell was arrested, and that was the sole reason he was imprisoned.   Detective Ross's deposition testimony confirms this.   *See* Doc. 53-7, pp. 10–11.   When the Court previously analyzed the facts of this case on summary judgment, there was a genuine, material dispute as to whether Detective Ross possessed arguable probable cause to arrest and incarcerate Mr. Rochell.   Mr. Rochell's arrest was based on false information about his felony record, which a police dispatcher had relayed to officers who were present at the scene, including Detective Ross.   It turned out that this dispatcher had confused Mr. Rochell's criminal history for that of another person who did, in fact, have a felony record.   With that said, Detective Ross was entitled to reasonably rely on the information the dispatcher passed on to him at the time of arrest, so he was entitled to qualified immunity for the claim of false arrest.   *See* Doc. 69, pp. 21–23.   He was not, however, entitled to qualified immunity for his subsequent decision—made some time after arriving at the police station and reviewing Mr. Rochell's Arkansas criminal history ("ACIC") report—that Mr. Rochell be held in jail for being a felon

4

in possession.

> As the Court explained in its prior order:
>
> The facts are undisputed that when Detective Ross arrived at the police station, he obtained a copy of the ACIC report that contained the false information about Mr. Rochell's criminal history, which, in turn, formed the sole basis for arresting Mr. Rochell for being a felon in possession.   At what point was it incumbent upon Detective Ross to carefully examine the ACIC report and make certain that the report was correct and contained a true record of Mr. Rochell's prior felony?   The law does not answer that question with certainty, but all parties here agree that Mr. Rochell disputed that he had a felony conviction from the time Detective Ross first informed him of it, and Mr. Rochell continued to dispute it after he arrived at the police station—so much so that Mr. Rochell's protests caused Detective Ross to question whether the evidence against him was correct.   Detective Ross testified that at the police station, Mr. Rochell was "very adamant" that the ACIC report was false when Detective Ross showed it to him.   (Doc. 53-7, p. 12).   And "the way" in which Mr. Rochell was denying the felony convictions—forcefully, yet "respectful[ly]," made Detective Ross feel "there may have been some validity to [Mr. Rochell's denials]."   *Id.*
>
> Even though Detective Ross harbored doubts as to Mr. Rochell's guilt—and by extension, the accuracy of the ACIC report that was the source of information confirming his guilt—Detective Ross conducted no further investigation to verify his suspicions. Even a cursory inspection of the ACIC report that Detective Ross held in his hands would have revealed the felony criminal history that was listed there belonged to a *White* man named Johnny Wayne Russell, Jr.; whereas Detective Ross had in his custody a *Black* man named Johnnie Rochell, Jr.   Exigent circumstances do not explain Detective Ross's failure to take a second glance at the top of the first page of the ACIC report and question the validity of the "false hit" on Johnny Russell prior to approving Mr. Rochell's transport to the WCDC.

(Doc. 69, pp. 23–24 (footnote omitted; emphasis in original)).

The ACIC report (Doc. 54-2) contained information that was exculpatory of the crime that Mr. Rochell had been accused of committing, and Detective Ross was in physical possession of that evidence at the time he ordered Mr. Rochell to jail.   Under those facts, the Court concluded that

> [a] reasonable jury could find that even though Detective Ross questioned
> Mr. Rochell's guilt at the police station, he did not behave reasonably in
> failing to conduct any investigation—either due to his lack of research skills,
> his lack of training in reading ACIC reports, and/or his eagerness to return
> to the field and complete the surveillance mission that Mr. Rochell's arrest
> had interrupted.

*Id.* at p. 26.

Mr. Rochell's arrest and imprisonment happened on a Friday.   Over the weekend, Detective Ross suffered what can fairly be described as an attack of conscience. He testified in his deposition that on Monday morning, he returned to the police station and told a fellow officer that he "ha[d] some concerns about [Mr. Rochell's arrest]." (Doc. 53-7, p. 14).   He said, "I think that this guy may have a point and there's an identity issue somewhere in here . . . When you run him, he shows to be a convicted felon but he is adamant that he's not and I just want to make sure we did the right thing."   *Id.*

In his quest to do "the right thing," Detective Ross spent part of the day Monday double-checking Mr. Rochell's criminal history.   Ultimately, Detective Ross was able to confirm that he had overlooked critical information in Mr. Rochell's ACIC report:   He had *no felony record* and, therefore, had been lawfully in the possession of his firearm throughout the entire encounter with law enforcement on Friday.   It is fully apparent that Detective Ross felt badly about the mistakes he had made in Mr. Rochell's case, as he decided to call him personally to apologize.   The call, which was recorded, was placed to Mr. Rochell at his home, since by that time he had mustered the hundreds of dollars necessary to post a bond.   During the call, Detective Ross first reassured Mr. Rochell that the Washington County prosecutor had been contacted and the "charges [for felon in possession] ha[d] been dropped."   (Doc. 53-17, Audio of Telephone Call).   Next,

6

Detective Ross acknowledged that Mr. Rochell had been right all along about his innocence.   Detective Ross admitted his error outright, telling Mr. Rochell, "You were correct—I do apologize."   *Id.*   He ended the call by promising Mr. Rochell that he "no longer ha[d] a pending court date" and could return to the police station to retrieve his firearm at his convenience.   *Id.*   He said:

> I'm willing to do whatever I can to make this right because I know that you were certainly inconvenienced—to say the least . . . . On a personal note, I hope you know it is not personal, man.   I wasn't . . . wasn't . . . trying to personally attack you or anything like that, but I had to go off what I knew at the time and that was that you were . . . you showed to be a convicted felon, and it's obviously not you.

*Id.*

Shortly after this phone call ended, the parties agree that Mr. Rochell came to the police station to meet Detective Ross and retrieve his firearm.   Though we are not privy to what was said during the meeting, Detective Ross recalls that on "the same day," he and his supervisor "broke out a[n] Arkansas criminal code book" to find another crime Mr. Rochell might be charged with, based on the events that took place the previous Friday, prior to the arrest.   (Doc. 53-7, p. 20).   The detectives settled on the crime of disorderly conduct, a misdemeanor.   *Id.*   They then contacted the city prosecutor and explained what they wanted to do, and the prosecutor approved the issuance of a citation.   *Id.* Detective Ross served the citation for disorderly conduct (Doc. 53-18) on Mr. Rochell on Friday, February 26, 2016, *an entire week* after the original arrest.

Mr. Rochell pleaded not guilty to the charge of disorderly conduct, and the matter was set for a bench trial before the District Court of the City of Springdale, Arkansas.   Mr. Rochell represented himself *pro se*, and the Court assumes that it was his word against

7

Detective Ross's during the trial. Although Mr. Rochell was likely indigent at the time,[1] he was not entitled to the appointment of counsel under Arkansas Rule of Criminal Procedure 8.2(a) because a state court "need not appoint counsel if the indigent defendant is charged with a misdemeanor and the court has determined that under no circumstances will incarceration be imposed as a part of any punishment."   In the end, Mr. Rochell was convicted of disorderly conduct and ordered to pay a fine and court costs totaling $390.00. (Doc. 53-19).   The Court is confident that Mr. Rochell had no idea then that a contrived misdemeanor charge and uncounseled conviction by a municipal judge could later bar his Seventh Amendment right to a jury trial for his Fourth Amendment claim of false imprisonment.

There is no formal record of proceedings before the Springdale District Court, so we do not know what Detective Ross told the municipal judge.   But we do have Detective Ross's sworn testimony in *this* case, and the testimony here does not come remotely close to supporting a conviction against Mr. Rochell for disorderly conduct.   According to Arkansas Code § 5-71-207(a):

> A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk of public inconvenience, annoyance, or alarm, he or she:
>
> (1) Engages in fighting or in violent, threatening, or tumultuous behavior;
>
> (2) Makes unreasonable or excessive noise;
>
> (3) In a public place, uses abusive or obscene language, or makes an obscene gesture, in a manner likely to provoke a violent or disorderly response;

---

[1] He qualified for *in forma pauperis status* in this Court on May 6, 2016, approximately one month after the bench trial in question.   *See* Doc. 7.

(4) Disrupts or disturbs any lawful assembly or meeting of persons;

(5) Obstructs vehicular or pedestrian traffic;

(6) Congregates with two (2) or more other persons in a public place and to comply with a lawful order to disperse of a law enforcement officer or other person engaged in enforcing or executing the law;

(7) Creates a hazardous or physically offensive condition;

(8) In a public place, mars, defiles, desecrates, or otherwise damages a patriotic or religious symbol that is an object of respect by the public or a substantial segment of the public; or

(9) In a public place, exposes his or her private parts.

Of the nine possible ways to prove disorderly conduct, it appears the one that could potentially be used in a proceeding against Mr. Rochell is found in subsection 7. According to that subsection, the state would have to show beyond a reasonable doubt that Mr. Rochell "recklessly creat[ed] a risk of public inconvenience, annoyance, or alarm" by "[c]reat[ing] a hazardous or physically offensive condition" "with the purpose to cause public inconvenience, annoyance, or alarm." *Id.*

The parties do not dispute that just prior to Mr. Rochell's arrest, Detective Ross had been sitting in an unmarked truck, parked "against the curb" in front of Mr. Rochell's lawn. (Doc. 53-7, p. 3). Mr. Rochell's neighborhood was one in which illegal drug activity took place.[2] Over the next several minutes, Mr. Rochell tried at least twice to get the driver's attention and inquire what he was doing there. *Id.* at pp. 3–4. According to

---

[2] In fact, Detective Ross was in the neighborhood on a stakeout along with members of the Drug Enforcement Agency's Task Force. (Doc. 53-7, p. 2). The officers were there to arrest a female suspected of engaging in illegal drug activity. She was believed to have been visiting a house located near Mr. Rochell's. *Id.*

Detective Ross, "he was kind of leaning over and waving at me with his arm, kind of just waving up and down." *Id.*   Mr. Rochell watched Detective Ross's undercover truck from his front porch "for probably a few minutes," *id.* at p. 3; Mr. Rochell then waved and tried to get the driver to roll down his window, *id.* at p. 4; when Detective Ross did not respond, Mr. Rochell went inside his house for "about five minutes," *id.*; he then came back outside and "started waving again," *id.*   Instead of speaking to Mr. Rochell, Detective Ross stayed in his truck and continued talking on his cell phone to other officers while looking through his binoculars.   *Id.*   He testified that Mr. Rochell could not have known at the time that he was a police officer on a stakeout: "We understand we're in unmarked cars. We don't look like police officers and people get pretty curious as to what we're doing." *Id.*

The facts are undisputed that after trying but failing to find out what the driver of this truck was doing parked in front of his house, talking on a cell phone, and surveilling something (or someone) through a pair of binoculars, Mr. Rochell went back into his house and retrieved his AR-15 firearm, which was attached to a strap.   He placed the strap over his head so that the firearm rested on his back.   Mr. Rochell then exited his front door and walked across his front lawn, coming to a stop about "eight to twelve feet" from the suspicious person parked in front of his house. *Id.* at pp. 5–6.   Mr. Rochell stood there and waited until Detective Ross saw him.   The following facts are true, as confirmed by Detective Ross in his deposition:

- Mr. Rochell's hands did not touch the weapon, and at no point did he point the weapon at anyone.   *Id.* at p. 23.

- The barrel of the weapon was pointed towards the ground, and it

10

rested on Mr. Rochell's back.   *Id.* at p. 22.

- Mr. Rochell made no threatening gestures.   *Id.*

- When Detective Ross saw Mr. Rochell standing on his lawn with the weapon strapped to his back, Detective Ross exited his vehicle, pointed his service revolver at him, and told him to drop the weapon. *Id.* at p. 7.

- Though initially Mr. Rochell "kind of froze and stood there," *id.* at p. 8, he removed the strap "very slowly" from his body and laid the weapon near a tree, *id.* at p. 27.

- Mr. Rochell never made any aggressive movements.   *Id.* at p. 27.

- He did not resist being forced to the ground.   *Id.* at p. 28.

- Once Mr. Rochell was on the ground, Detective Ross "very likely" placed the barrel of his pistol against Mr. Rochell's head. *Id.* at p. 30.

- Detective Ross does not deny that he might have said to Mr. Rochell, "I'm going to blow your fucking head off."   *Id.*

- Mr. Rochell was handcuffed without resistance.   *Id.* at p. 9.

- Mr. Rochell responded to Detective Ross's questions.   *Id.*

- Mr. Rochell insisted that he did not have a felony record, and according to Detective Ross, Mr. Rochell "was certainly very adamant about it," but "[h]e was being respectful."   *Id.* at p. 12.

The Court has no doubt that Detective Ross became alarmed when he first saw Mr. Rochell standing on the lawn several feet away from him with a weapon strapped to his back.   But it is also true that Detective Ross's subjective feeling of alarm does not, in and of itself, establish that Mr. Rochell committed the crime of disorderly conduct. Instead, the objective facts surrounding the takedown and arrest, as outlined above, indicate that no crime was committed.   Furthermore, the law is clear that Mr. Rochell did nothing illegal by standing on his own front lawn with his weapon strapped to his person.

*See* Ark. Code Ann. § 5-73-120(c) ("It is permissible to carry a weapon under this section if at the time of the act of carrying the weapon: (1) The person is in his or her own dwelling or place of business or on property in which he or she has a possessory or proprietary interest.").

As should be clear from the Court's discussion above, it is difficult to fathom how Mr. Rochell was convicted of disorderly conduct if Detective Ross testified as he did in this Court.   Regardless of the Court's views, however, Mr. Rochell paid his fine and did not seek a *de novo* appeal of his conviction in a court of record.   According to the holding in *Heck v. Humphrey*, 512 U.S. 47, 486–87 (1994), he is now barred from questioning the validity of his state-court conviction in the context of bringing a § 1983 civil action for damages.   This conviction—which arose from the same set of facts that are the subject of the false-imprisonment claim in this § 1983 case—forces the Court to conclude that there was probable cause (in hindsight) to arrest Mr. Rochell, even though Detective Ross's stated reason for arrest—and subsequent imprisonment—was that Mr. Rochell was suspected of being a felon in possession of a firearm.   The Supreme Court's holding in *Devenpeck v. Alford* is that an arresting officer's state of mind is irrelevant to the existence of probable cause.   543 U.S. 146, 153 (2004).   *Devenpeck* has been interpreted by courts to stand for the proposition that as long as probable cause exists to arrest an individual for *any crime*, the arresting officer's stated reason for making the arrest is irrelevant. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista,* 532 U.S. 318,

354 (2001). This is because "the probable cause inquiry is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest." *United States v. Jones,* 432 F.3d 34, 41 (1st Cir. 2005) (citing *Devenpeck*).

The offense of disorderly conduct is classified as a Class C misdemeanor and carries with it a possible punishment of up to 30 days in jail.  Ark. Code Ann. § 5-4-401(a)(3).   It follows, therefore, that if there were probable cause to send Mr. Rochell to jail on the night of the arrest due to disorderly conduct, his claim of false imprisonment would lack validity and merit dismissal as a matter of law.   The Court hesitates, however, to simply dismiss this claim without commenting on the injustice of this result.   Mr. Rochell will be deprived of his Seventh Amendment right to present to a jury of his peers the facts which he believes show he was falsely imprisoned in violation of his Fourth Amendment rights for being a felon in possession.   Detective Ross's own deposition testimony coupled with his phone call of apology to Mr. Rochell indicate that Detective Ross was well aware he had made grievous errors in Mr. Rochell's case—errors that could subject him to a civil lawsuit for constitutional rights violations. Bringing a face-saving misdemeanor citation against Mr. Rochell a week after the arrest was a gamble that paid off.   Mr. Rochell was indigent at the time, and when Detective Ross served him with the disorderly conduct citation *five days after dropping the felon-in-possession charge*, it was more likely than not that Mr. Rochell would have decided to represent himself rather than hire counsel.   The misdemeanor conviction effectively immunized Detective Ross from potential prosecution for a Fourth Amendment violation by Mr.

Rochell.   This is because the conviction retroactively manufactured probable cause to both arrest and imprison Mr. Rochell.

Though the underlying rationale behind the *Devenpeck* "any crime" rule is essentially sound, its application in this case is troubling.   The Court agrees that, generally speaking, a police officer should possess the latitude to arrest a suspect for committing one crime, but later determine that he should be charged with a different crime—provided there was probable cause to arrest him for the crime charged. However, it is not difficult to imagine the *Devenpeck* rule being misused by law enforcement to immunize unlawful conduct, particularly when the arresting officer faces possible civil penalties for violating an indigent suspect's Fourth Amendment rights.   This appears to be what has happened here.   For that reason, principles of equity and justice would be best served if district and appellate courts alike engaged in a critical evaluation of the *Devenpeck* rule.   As for Mr. Rochell's particular case, however, the Court believes its hands are tied, and his false-imprisonment claim must be dismissed with prejudice on summary judgment.

## IV.   CONCLUSION

**IT IS ORDERED** that Defendant Detective Cody Ross's second Motion for Reconsideration (Doc. 100) is **GRANTED**. The claim for false imprisonment is **DISMISSED WITH PREJUDICE**.   This leaves only the excessive force claim for trial.

**IT IS SO ORDERED** on this 25th day of February, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

14