IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JOHNNIE ROCHELL, JR.**                                                              **PLAINTIFF**

**V.**                                **CASE NO. 5:16-CV-5093**

**DETECTIVE CODY ROSS**                                                              **DEFENDANT**

## OPINION AND ORDER

Now before the Court are Defendant Detective Cody Ross's Motion in Limine (Doc. 141) and Brief in Support (Doc. 142) and Plaintiff Johnnie Rochell, Jr.'s Response in Opposition (Doc. 158). The Court held a hearing on the Motion on September 14, 2021, and both parties presented oral argument. The Court believes many of the issues raised in the Motion are dependent on a preliminary ruling the Court must make regarding the timeline of events to be presented to the jury. Specifically, the Court must determine the relevant scope of factual events that occurred over the course of approximately two months, considering that the sole remaining cause of action for excessive force stems from a single event at the beginning of that timeline.

Whether a police officer used excessive force turns on the "facts and circumstances of each particular case." *Graham v. Connor,* 490 U.S. 386, 396 (1989). The reasonableness of a particular use of force must be determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (citing *Graham*, 490 U.S. at 396). This means that the facts immediately before and during the officer's alleged use of force are critical, but the facts *after* the alleged use of force are

1

less likely to be relevant.  Furthermore, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397.

The alleged excessive force in this case occurred on Mr. Rochell's front lawn on February 19, 2016.  It is alleged that Detective Ross placed the barrel of his service weapon against Mr. Rochell's head and threatened to kill him while Mr. Rochell was unarmed, on the ground, and not posing any threat.  Police dispatch was radioed and given Mr. Rochell's name.  The dispatcher relayed erroneous information to the officers about Mr. Rochell's criminal history, and based on that information, Mr. Rochell was arrested for being a felon in possession of a firearm and transported to the police station for booking and jailing on that charge.  Mr. Rochell spent the night in jail and bonded out the following day.  Days after that, Detective Ross concluded that he was wrong about Mr. Rochell's criminal history and called him to apologize and to let him know the felon-in-possession charge would be dropped.  But then Detective Ross (allegedly) worked with Springdale City Attorney Ernest Cate to charge Mr. Rochell with a different crime (allegedly) arising from the same sequence of events on February 19.  On February 26, Mr. Rochell was served with a misdemeanor citation for disorderly conduct, and on April 7 he was convicted of that crime following a bench trial in Springdale District Court (which is not a court of record and Mr. Rochell was not entitled to the appointment of counsel).  Mr. Rochell filed the instant lawsuit on April 29, 2016.

Against this factual backdrop, the Court advised the parties during the motion hearing that it was struggling to determine which events—within that timeline—were relevant to the jury's fact-finding mission, given that the alleged act of excessive force occurred early in the timeline, and Mr. Rochell's claims relating to false arrest and false imprisonment were previously dismissed.  Defense counsel opined, "[W]here we should draw the line would be when Mr. Rochell is in handcuffs and he is sat up or in the patrol car, whichever, at that point."  The Court then inquired, "How do we get him out of the handcuffs, or do we just leave the jury with the impression that he did something wrong and was arrested?"  Counsel responded, "Well, I think there is obviously going to have to be testimony that he was ultimately charged and convicted for disorderly conduct."  The Court then asked, "So if you want the disorderly conduct to come in, are we just supposed to surgically excise what happened in the middle?"  Counsel responded, "Yes."

Counsel for Detective Ross did not think it relevant that Mr. Rochell was actually arrested that day for being a felon in possession.  Nor did counsel think it necessary to tell the jury that: (1) the felon-in-possession charge was predicated on an error made by the police dispatcher; (2) Mr. Rochell was taken to the police station, and Detective Ross did not discover the (very obvious) error; (3) Mr. Rochell was imprisoned on the felon-in-possession charge in the Washington County Detention Center; (4) he spent the night in jail and bonded out; (5) when the error was discovered the charge was immediately dropped; and (6) Detective Ross called Mr. Rochell to apologize.  Instead, Defense counsel suggested cutting off the evidence at the point where Mr. Rochell was placed in

handcuffs and then skipping ahead to the part where he was charged and convicted of disorderly conduct.   Defense counsel appears to believe that other facts surrounding the disorderly conduct citation—such as the fact that it was served on Mr. Rochell a week after February 19 incident—are appropriate to keep from the jury, presumably to paint her client in a more favorable light.[1]

After hearing Detective Ross's position on the relevant timeline, the Court remarked that it was "not inclined to extend the facts so far out as the whole charging and trial of disorderly conduct, because that will surely lead to much testimony, much evidence, that really has nothing to do with the discrete issue as we have been left with for the purposes of trial."   However, the Court made clear that if Detective Ross insisted on telling the jury about the disorderly conduct conviction, it would be improper to conceal from them the fact that Mr. Rochell was arrested on *different charges* on February 19, the date of the alleged excessive force incident.   The Court explained, "[Y]ou can't surgically excise what happened in the middle, because the plaintiffs have to be able to cross-examine on the motivations for pursuing that [disorderly conduct] charge."   Defense counsel responded that the disorderly conduct conviction was so necessary to Detective Ross's case that, in order to have that evidence admitted, he would "agree to allow in all of the felon in possession and the ACIC stuff, with the exception that we have a limiting instruction . . . ."

---

[1] She stated, "I think we can just leave it as that he was charged and convicted for the disorderly *and we don't need to say that it was a week later*."

The Court next addressed Mr. Rochell's counsel, Matthew Bender.  He stated he also was in favor of allowing the jury to hear about the disorderly conduct conviction, provided that the jury was also told the rest of the facts that occurred on and after February 19.  In particular, Mr. Bender wanted the jury to hear that the felon-in-possession charge was eventually dropped and that Detective Ross "made a phone call," which Mr. Bender argued "is very relevant to this case, where he apologized to Mr. [Rochell] and said that all of the charges were going to be dropped."

The Court then observed, "Best I can tell, both sides would have the disorderly conduct charge and conviction come in without objection."  Defense counsel agreed and further conceded, "[I]f the Court is going to allow testimony about the felon-in-possession arrest, and all the way up through the disorderly conduct charge and then conviction, then I certainly think [Detective Ross's apology is] probably part of the story," provided the Court gave a limiting instruction to the jury.  In light of that concession, the Court summarized, "Kind of what I hear you saying is that you would prefer that we surgically excise out these certain portions [of the facts], but if the middle portion has to come in in order for the disorderly conduct charge and conviction to come in, you understand that— as long as the Court provides a limiting instruction."  Defense counsel responded, "Yes."

Upon careful consideration of the parties' views, the Court will defer to their joint request to allow the timeline of events to extend to Mr. Rochell's conviction for disorderly conduct.  The parties are presently in a better position than the Court to ascertain the scope of facts relevant to the sole claim pending for trial, and the Court has insufficient evidence before it to overrule the parties' mutual assessment that the disorderly conduct

5

conviction is relevant to liability, credibility, and/or damages. However, the Court declines defense counsel's invitation to conceal from the jury the facts that occurred between the time Mr. Rochell was handcuffed until the time he was convicted of disorderly conduct. Concealment of these facts would grossly mislead and confuse the jury. Further, the disorderly conduct conviction cannot be presented to the jury in a vacuum; therefore, in order for the conviction to be introduced, Detective Ross acquiesced to the relevance of all the intervening facts, provided that a limiting instruction is also given. The parties agreed that a limiting instruction would properly focus the jury on its sole task: deciding whether Detective Ross committed excessive force and, if so, assessing the damages that flow from that incident. Counsel for Detective Ross is instructed to prepare a proposed limiting instruction, confer with counsel for Mr. Rochell, and report back to the Court prior to the first day of trial on Monday.

The Court's predicate ruling here is limited to the relevant scope of the factual timeline under Rule 401. Rulings as to specific items of evidence along this relevant timeline are discussed below. That said, if either party believes at trial that certain documents or testimony not mentioned here are inadmissible based on some other rule or reason, then an appropriate objection should be raised and the Court will consider it with the context of trial at that time.

Having determined the relevant timeline under Rule 401, the Court now turns to more specific items of evidence that Detective Ross seeks to exclude in his omnibus Motion in Limine.

**A.   References to Law Enforcement or the State of Policing Generally**

Detective Ross seeks to exclude statements or arguments that refer to law enforcement or the state of policing in general or to specific encounters between citizens and members of law enforcement other than those encounters at issue in the present case. He contends that such statements and arguments "would only be introduced for the sole purpose of attempting to portray Detective Ross as a bad actor simply because he is a member of law enforcement . . . to inflame the jurors' passions and fears . . . in violation of Federal Rules of Evidence 401, 402, and 403." (Doc. 142, p. 2). Mr. Rochell responds that he should be allowed to ask jurors in voir dire about their experiences and biases, including against police officers, and in doing so, inquire into any biases jurors may have as far as race and policing. He also clarifies that he "has no intention of placing the entire police system on trial in this case." (Doc. 158, p. 3).

The Court agrees with Detective Ross that any references to the state of law enforcement generally, whether locally or nationally, or to publicize cases involving law enforcement that have no factual relationship with the instant case would be excludable from evidence under Rules 401 and 402. To that extent, the Motion is **GRANTED** as to this liminal issue. However, as the Court explained during the motion hearing, it is appropriate to question the venire panel *generally* about such issues, as well as the panel's own past experiences with law enforcement, so as to ascertain the extent of any bias.

**B.   Evidence Regarding Mr. Rochell's Arrest and Subsequent Booking**

Next, Detective Ross asks the Court to exclude evidence concerning Mr. Rochell's

7

arrest for being a felon in possession of a firearm and the resulting "mix-up," as Detective Ross calls it, that led to booking and jailing Mr. Rochell on that charge. In view of the Court's reasoning as to the relevant timeline of events, and Detective Ross's qualified agreement to the same, this portion of the Motion is **DENIED**, with the caveat that Detective Ross should object at trial if Mr. Rochell proceeds too far astray from his stated intentions at the motion hearing.

**C.  Evidence that Mr. Rochell's Actions Did Not Amount to Disorderly Conduct**

Detective Ross argues that Mr. Rochell should not be permitted to testify or argue that his actions did not amount to disorderly conduct or that the conviction was erroneous. Detective Ross asserts that the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), bars the introduction of testimony in a federal civil case that contradicts the facts established in a state court criminal case.  The Court disagrees.

In *Simpson v. Thomas*, a case similar to the instant one involving a § 1983 claim for excessive force, the Ninth Circuit concluded "that *Heck* does not create a rule of evidence exclusion."  528 F.3d 685, 691 (9th Cir. 2008).  The court thoroughly reviewed relevant Supreme Court precedent and noted, "Since the inception of the rule in *Heck*, the Court has only addressed this issue a few times, and in none of those cases did the Court address the use of *Heck* to bar evidence."  *Id.* at 694.  In other words, though *Heck* may be used to bar a *claim* in federal court, it cannot be used to bar evidence. Accordingly, the *Simpson* court held that "*Heck* is not an evidentiary doctrine" and reversed the trial court's decision to bar the § 1983 claimant from "tell[ing] the jury the entire story" of his state court conviction.  *Id.* at 696.

8

This Court finds the reasoning and holding in *Simpson* to be persuasive. Therefore, Mr. Rochell may present testimony to the general effect that his actions did not amount to disorderly conduct to show that the charge was motivated by ulterior purposes, however he may not go so far as to attack the legal effect of the conviction. To that extent, the liminal motion is **DENIED**. However, to be clear, the nature and specifics of any such proposed testimony or argument was not fleshed out in the briefing or during the hearing; so Detective Ross may object at trial if the actual testimony sought is inappropriate under Rule 403, lacking in foundation, or otherwise inadmissible for some other reason.

### D. Evidence from Detective Ross's Personnel File

Next, Detective Ross seeks to exclude evidence from his personnel file about a misdemeanor driving-under-the-influence conviction and reports or warnings regarding prior uses of force. Mr. Rochell responds that he does not intend to introduce Detective Ross's past criminal convictions and agrees such information is irrelevant. The Court also finds that Detective Ross's past uses of force are excluded under Rule 404(b)(1), if introduced to prove his character or otherwise show that he acted in accordance with such character.

However, Mr. Rochell suggests that some information in the personnel file may be "relevant to Mr. Ross's background." (Doc. 158, p. 6). The Court is not certain at this point why or how Mr. Rochell might seek to use other personnel documents at trial. Accordingly, the Motion is **GRANTED** to the extent that prior convictions and reports or warnings regarding force are inadmissible; but the Court will **DEFER** ruling as to other

9

information in the personnel file. Mr. Rochell's counsel must request the Court's permission outside the presence of the jury before he references or attempts to use any aspect of the personnel file at trial.

### E. Evidence of Special Intelligence Bulletins

Originally, Detective Ross moved to exclude from evidence certain special intelligence bulletins produced by the Springdale Police Department concerning Mr. Rochell. In view of the Court's reasoning as to the timeline of relevant events and Detective Ross's qualified agreement to the same, this portion of the liminal Motion is **DENIED**.

### F. Email between the Court and Defendant's Counsel

As the Court discussed at the hearing, the Motion with respect to the admissibility of an email between Chambers and Detective Ross's counsel is **GRANTED**. The email is not admissible. Until the issue arises in the context of trial, the Court will **DEFER** ruling on whether Mr. Rochell may solicit testimony that Detective Ross sought to have Mr. Rochell arrested at the courthouse (during a pre-trial hearing in this case) as an intimidation tactic.

### G. Evidence of Springdale's Policies and Procedures

Next, Detective Ross argues that evidence of Springdale's police policies, including its covert-operations and use-of-force policies, are irrelevant to this trial. Mr. Rochell agrees this evidence is not relevant, unless Detective Ross were to open the door by testifying or inferring that his actions were consistent with Springdale's policies. The Motion as to this liminal issue is **GRANTED**, although the Court will revisit the matter if

Detective Ross opens the door.

### H.  Evidence of Lay Opinion on Medical Conditions

Detective Ross states that he anticipates Mr. Rochell will testify about his mental anguish or emotional distress resulting from the alleged use of force.  Though it does not appear that Detective Ross objects to general testimony on mental anguish, he believes Mr. Rochell and other lay witnesses should not be permitted to testify that Mr. Rochell "suffers from any specific medical conditions, such as Post Traumatic Stress Disorder . . . because such testimony would be based solely on speculation and cannot be substantiated by any medical diagnosis made by a physician or an expert with proper training to testify."  (Doc. 142, p. 14).

Mr. Rochell responds that he intends to testify as to his "stress, loss of income, emotional harm, expenses . . . inconvenience, and loss of enjoyment of life . . . ."  (Doc. 158, p. 8).  Mr. Rochell says he will not testify that he has been medically diagnosed with Post Traumatic Stress Disorder or the like.  And no one is suggesting that Mr. Rochell can't testify as to his subjective health complaints and mental anguish.  Nor would it be improper for other witnesses to testify about their observations of Mr. Rochell's physical or mental health.  Subject to a proper Rule 602 foundation at trial, such observations and Rule 701 lay opinions are appropriate and admissible.  Accordingly, the Motion as to this liminal issue is **GRANTED** to the extent that any specific medical diagnosis by Mr. Rochell will not be admitted.  However, the Motion is **DENIED** as to the admissibility of lay opinions, including Mr. Rochell's observations regarding his own mental health and anguish.

### I. Testimony of Kalin Rochell

Detective Ross contends that Mr. Rochell's son, Kalin, should be prohibited from testifying at trial because he has no personal knowledge of the incident at issue. Further, Detective Ross argues that Kalin will testify "about Mr. Rochell's damages, such as monetary, emotional and reputational damages . . . [without] any specific knowledge, other than speculative hearsay . . . ." (Doc. 142, p. 14).

The Court will not preemptively exclude Kalin's testimony at trial based solely on Detective Ross's representation about the nature of that testimony and select excerpts from his deposition transcript. Kalin was present at Mr. Rochell's home on the day of the incident in question, and, subject to laying a personal knowledge foundation under Rule 602, he can potentially offer relevant testimony about what he saw and heard and any impressions he had regarding his father's behavior in the weeks and months to follow. Such testimony could be relevant to Mr. Rochell's claim for damages. Therefore, this portion of the Motion is **GRANTED** to the extent that Kalin, like any other witness, will be required to establish a personal knowledge foundation under Rule 602 before he may testify as to any particular facts. The Motion is **DENIED** in all other respects.

### J. Testimony of Jeff Taylor and Ron Hritz

From the hearing, the Court understands that Mr. Rochell intended to call Springdale police officers Jeff Taylor and Ron Hritz as witnesses to authenticate the special intelligence bulletins issued by the Springdale Police Department that name Mr. Rochell. Detective Ross stipulated to these bulletins' authenticity and agreed they could

be received into evidence if the Court deemed them relevant.  In view of the Court's general discussion and findings at the beginning of this Order, these documents are relevant.  Mr. Rochell's counsel agreed that if the bulletins could be received into evidence, he would not call Officers Taylor and Hritz at trial.  Accordingly, the Motion as to this liminal issue is **GRANTED**.

### K.   Testimony of Dustin Treat

Sergeant Dustin Treat appears on Mr. Rochell's witness list.  He was Detective Ross's direct supervisor at the time of the events in question.  He was not present at Mr. Rochell's home and did not witness the alleged use of excessive force.  Mr. Rochell responds that Mr. Treat allegedly told another officer or officers to write a report in response to Mr. Rochell's grievance.  It appears such evidence would be relevant; however, without more context, the Court **DEFERS** ruling until a specific objection is presented in the context of trial.

### L.   Testimony of Ernest Cate

Springdale City Attorney Ernest Cate appears on Mr. Rochell's witness list.  Mr. Rochell claims that he is calling Mr. Cate to authenticate the conviction and sentencing order for disorderly conduct and pertinent parts of the misdemeanor trial testimony.  The Court finds that Mr. Cate's testimony could potentially be relevant under Rule 401. Further, in light of the Court's earlier ruling regarding *Heck*, there is no apparent bar to Mr. Cate testifying about Mr. Rochell's citation and conviction for disorderly conduct. Accordingly, the Court **DENIES** this liminal Motion to the extent that it asks that Mr. Cate be completely precluded from testifying.  However, the specifics of Mr. Cate's proposed

testimony were not briefed or outlined at the hearing, so the Court **DEFERS** ruling on the admissibility of any particular testimony until an objection is raised in the context of trial.

### M.   Testimony of Vence Motsinger

Mr. Rochell agrees he will not call Mr. Motsinger, so the Motion is **GRANTED** as to this argument.

### N.   Evidence of Offers of Compromise

Mr. Rochell agrees he will not introduce offers of compromise at trial, so the Motion as to this argument is **GRANTED**.

### O.   Evidence of Insurance Coverage

Mr. Rochell agrees, in essence, that he will not introduce evidence of Detective Ross's partial insurance (or risk pool) coverage through the Arkansas Municipal League except if Detective Ross "introduces his net worth, without revealing he is indemnified—in an effort to diminish punitive damages . . . ."  (Doc. 158, p. 10).   During the final pretrial hearing, Detective Ross's counsel stipulated that she did not intend to directly or indirectly reference Detective Ross's financial condition or suggest that a judgment would adversely affect him financially.  Subject to that stipulation, the Motion as to this liminal issue is **GRANTED**.

### P.   Golden Rule Arguments

Mr. Rochell agrees he will not introduce "golden rule" arguments in which jurors are asked to place themselves in Mr. Rochell's shoes.  The Motion as to this argument is **GRANTED**.

**IT IS SO ORDERED** on this 16th day of September, 2021.

                                                                                                  _____
                                                                                                  TIMOTHY L. BROOKS
                                                                                                  UNITED STATES DISTRICT JUDGE