IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JOHNNIE ROCHELL, JR.**                                                                                    **PLAINTIFF**

**V.**                                               **CASE NO. 5:16-CV-5093**

**DETECTIVE CODY ROSS**                                                                        **DEFENDANT**

## AMENDED ORDER[1]

Now before the Court are Plaintiff Johnnie Rochell, Jr.'s Motion to Exclude Expert Witness (Doc. 134) and Brief in Support (Doc. 135) and Defendant Detective Cody Ross's Response in Opposition (Doc. 138).  Detective Ross retained John J. "Jack" Ryan, a former police officer, to testify as an expert on police use of force.   Pending for trial is Mr. Rochell's claim that Detective Ross used excessive force against him during an arrest, violating Mr. Rochell's constitutional rights and creating a cause of action under 42 U.S.C. § 1983.

The contours of the claim are well defined, and the relevant facts needed for the jury to make its decision are relatively few.   Mr. Rochell maintained in his *pro se* Amended Complaint:  "Cody [Ross] threatened my life with his gun as I layed [sic] on the ground with my hands behind my back."  (Doc. 8, pp. 5–6).   After that, Mr. Rochell retained counsel, who filed a response on Mr. Rochell's behalf in opposition to Detective Ross's motion for summary judgment.   Mr. Rochell explained in that response:

---

[1] During the final pre-trial conference on September 14, 2021, Detective Ross's counsel orally moved for reconsideration of the Court's Order excluding the testimony of his expert, Jack Ryan. (Doc. 163). For the reasons stated from the bench, the Court granted reconsideration for purposes of better explaining the Court's ruling that Mr. Ryan's opinions were not supported by the pertinent facts. This Order replaces and supersedes the Court's Order of September 10, 2021, at docket entry 163.

1

> **When Detective Ross pointed his gun at the back of Rochelle's head at a point blank range and threatened to blow his head off, there was no immediate threat to the safety of the officer, nor was Mr. Rochelle trying to resist arrest. He was lying face down on the ground, unarmed and complying with officer commands. At that point, Detective Ross's actions were excessive** in violation of Mr. Rochelle's Fourth Amendment protections. As such, Detective Ross is not entitled to summary judgment as a matter of law as a genuine issue of material fact remains as to whether a reasonable officer would believe that Rochelle was posing an immediate threat to the safety of the officers, or whether he is actively resisting arrest or attempting to evade arrest by flight and, thus whether Ross used excessive force.

(Doc. 59, p. 14 (emphasis added)).

The Court then issued its ruling on summary judgment, denying Detective Ross qualified immunity on the excessive-force claim and framing the claim as follows:

> Viewing the facts in the light most favorable to Mr. Rochell, **after he was disarmed, with his weapon on the ground several feet from him, and he was lying on the ground with his hands behind his back, posing no threat to anyone, Detective Ross then pressed his weapon "behind [Mr. Rochell's] right ear" and screamed, "I'll blow your fucking brains out if you ever approach me like that again!"** (Doc. 53-1, p. 7). For his part, Detective Ross does not recall specifically what he said once Mr. Rochell went to the ground, but he does remember screaming at Mr. Rochell and admits that he pointed his gun at Mr. Rochell "when he was on the ground," at "[a]lmost point blank" range, (Doc. 53-7, p. 29), and that it was "[v]ery likely" that he placed the barrel of his pistol directly against Mr. Rochell, just as Mr. Rochell claims he did, *id.* at 30. Detective Ross neither admits nor denies that he then threatened to "blow [Mr. Rochell's] fucking head off." *Id.*
>
> Under these facts, Mr. Rochell has constructed a triable claim for excessive force that should be presented to a jury.

(Doc. 69, p. 18 (emphasis added)).

The Eighth Circuit then opined on appeal that "the facts the district court found sufficiently supported at summary judgment gave rise to a Fourth Amendment violation

because a police officer uses excessive force **by pointing his service weapon at the head of a suspect who has dropped his weapon, has submitted to arrest, and no longer poses an immediate threat to the safety of officers or others**." (Doc. 83-1, p. 2 (emphasis added)). The above quotations from Mr. Rochell's summary judgment brief, this Court's summary judgment opinion, and the Eighth Circuit's appellate opinion set forth the excessive-force claim that will be presented to the jury.

Turning now to the basis of his expert opinion, Mr. Ryan's report identifies the materials he reviewed and relied upon in forming his opinions, including the depositions of Mr. Rochell and Detective Ross. *See* Doc. 135-1, pp. 12–14. Mr. Ryan then summarizes certain facts that are supposedly important to his opinions, including the following:

- Mr. Rochell's testimony:
    - "I put my hands up immediately out in front of me palms out facing towards him. At this time Cody [Ross] did not identify himself as a police officer." *Id.* at p. 20.
    - [after Detective Ross identified himself as a police officer:] "I'm steady watching his body language . . . trying to [not] get shot. . . . just trying to really wait for him to like cool down before I make any moves, so that's when I took my left hand with my thumb, I grabbed the strap and pulled it over my head, passed it to my right hand and set it on the ground, hands still out in front of me." *Id.* at p. 21.
    - "I took a step to my left over away from the weapon, and that's when

    he came around his truck and he became even more agitated at that point, 'I'll f-ing blow your brains out, get on the ground. I'll f-ing kill you, get on the ground.'" *Id.*

- "So as I'm turning to get on the ground I noticed another SUV parked at the corner. It was a silver SUV. As I'm turning to get on the ground, that other SUV pulled up and I'm on my knees, you know, getting down, and then he ran up and he like kind of pushed me, and I was already going to the ground to like lay down flat, and he tried to like push me anyway, and then ***that's when he took his gun and he pressed it behind my right ear and [Detective Ross said,] 'I'll blow your f-ing brains out if you ever approach me like that again. Don't you ever approach me like that again.***'" *Id.* at p. 21 (emphasis added).

- Detective Ross's testimony:
    - He was parked at the curb in front of Mr. Rochell's house in a truck that was not marked as law enforcement. *Id.* at p. 15.
    - Detective Ross testified that his badge was on a chain. He stated that he did not hold the badge up high or point at Mr. Rochell Rochell. *Id.* at p 18.
    - Mr. Rochell did not make any threatening gestures towards Detective Ross: "[H]e was . . . waving at me with his arm, kind of just waving up and down. He was obviously trying to get my attention." *Id.* at p.

4

15.

- Mr. Rochell did not point the rifle at Detective Ross.  *Id.* at p. 16.
- According to Detective Ross:  "I was scared and I had my weapon drawn, I pointed it at [Mr. Rochell]."  *Id.*
- "I rounded the front of my vehicle, giving commands to drop the weapon and [Mr. Rochell] kind of just froze, which I think is understandable at this point. I think he was probably just as shocked as I was. And he just kind of froze and stood there; not being uncooperative by any means but certainly didn't drop the weapon initially."  *Id.*
- "And after what seemed like just a split second, but it was probably ten or fifteen, twenty seconds of me screaming at him, he finally did unsling the weapon. He put it on the ground."  *Id.*
- "He grabbed the sling and he just lifted it over his head, as you typically would unsling a rifle. It was obviously a pretty tense moment because no he is kind of holding it but he never made any aggressive movements. He did it very slowly and very correct—I mean he did it the correct way."  *Id.* at p. 18.
- "I basically advanced on him and placed my hand on his chest, his upper chest somewhere and I just shoved him to the ground . . . [a]nd eventually [Mr. Rochell] got onto his belly . . . ."  *Id.* at p. 19.
- Mr. Rochell did not resist Detective Ross as he forced Mr. Rochell to

5

- the ground.  *Id.*
  - o   Detective Ross was still pointing his Glock at Mr. Rochell when Mr. Rochell was on the ground.  *Id.*
  - o   Detective Ross believes it is "very likely" that his Glock touched Mr. Rochell.  *Id.*
  - o   Detective Ross believes it is "very likely" that the barrel of his Glock was placed against Mr. Rochell. *Id.*[2]

Against this backdrop of remarkably similar versions of the same event by opposing parties, Mr. Ryan offers the following expert opinions:

- "It is my opinion . . . that the use of force used by Detective Ross by pointing a firearm at Mr. Rochell, maintaining cover of Mr. Rochell and putting Rochell on the ground was consistent with generally accepted [police] policies, practices, training, industry standards, and legal mandates." (Doc. 135-1, p. 25).

- "[Mr. Rochell's] sudden[] appear[ance] with an AR-15 rifle and move[ment] toward Ross . . . . was clearly the type of rapidly evolving situation where an officer is forced to make split-second decisions with respect to the appropriate response."  *Id.* at p. 26.

- "Rochell's subjective intentions as to what he was going to do with his rifle

---

[2] Tellingly, though, Mr. Ryan fails to reference Detective Ross's testimony about the singular event on which the claim is premised. Omitted from Mr. Ryan's expert report is Detective Ross's testimony that "[Mr. Rochell] has alleged . . . that I made the statement 'I'm going to blow your fucking head off.' I don't deny that it happened, but I don't recall that it happened either." (Doc. 53-7, p. 30).

are not relevant to the use of force analysis. Based on the foregoing facts detailed in this report, any reasonable and well-trained officer would conclude that he or she was about to have confrontation with an individual who had armed themselves with a rifle." *Id.*

- Officers are trained using the three-part test in *Graham v. Connor* "to consider the seriousness of the offense; whether or not the subject poses an immediate physical threat to the officer or anyone else; and finally whether the subject is actively resisting or attempting to evade arrest by flight." *Id.* at p. 27.

- "[According to policy] governing all federal law enforcement, the threat posed by a subject who has brandished a firearm and is now running is clearly recognized as an imminent threat of serious bodily harm or death that justifies the use of deadly force . . . . Thus, even when Mr. Rochell put the rifle down and . . . took one broad step away, he remained in close proximity to the rifle.  As such, all law enforcement training and policy would recognize the continued imminent threat and the need to maintain cover on Rochell.  Thus, the continued constructive authority, by pointing a firearm at Rochell until he was secured in handcuffs and searched would be consistent with generally accepted [police policies] . . . ." *Id.* at pp. 29–30.

The problem here is that Mr. Ryan's ultimate opinions are not based on the objective facts that he spent ten pages detailing in his report. Nor do his opinions align

7

with the very law that he correctly cites. One need only compare the objective facts outlined in Mr. Ryan's own report with the Eighth Circuit's explanation of the law in this very case: "[A] police officer uses excessive force by pointing his service weapon at the head of a suspect who has dropped his weapon, has submitted to arrest, and no longer poses an immediate threat to the safety of officers or others." (Doc. 83-1, p. 2).

Although Mr. Ryan cites to *Graham v Connor*, 490 U.S. 386 (1989), he does not identify a single fact that supports his conclusion that Detective Ross's actions were objectively reasonable under *Graham*'s three-part analysis. First, when considering the "severity of the crime," Mr. Ryan references the fact that Detective Ross was legally parked at the street curb. That is factually irrelevant. Mr. Rochell was lawfully standing in his own yard. He was not the suspect of any crime. As to the "threat" presented by Mr. Rochell, Detective Ross's own testimony (excerpted above) is that Mr. Rochell did not brandish the rifle or point it towards him, he froze in place, complied with commands, marshaled the rifle correctly upon disarming, stepped away from the rifle, and did not resist being placed on his belly away from the rifle. Mr. Ryan fails to explain how these facts—all of which occurred prior to Detective Ross pressing his Glock against Mr. Rochell's head—constitutes immediate physical threat to Detective Ross. The third component is whether Mr. Rochell attempted to flee, and certainly no one is suggesting here that Mr. Rochell was attempting to do that.

At best, Mr. Ryan opines generally that it was acceptable police practice for Detective Ross—when startled by Mr. Rochell's approach with a rifle slung on his back—to "point[] a firearm at Mr. Rochell, maintain[] cover of Mr. Rochell and put[] Rochell on

8

the ground." (Doc. 135-1, p. 25). But as the Eighth Circuit also explained in its opinion in this case, while it is true that "officers may reasonably brandish weapons when confronted with serious danger in course of investigative stops, [ ] they are not permitted to ignore changing circumstances . . . ." (Doc. 83-1, (citing *Wilson v. Lamp*, 901 F.3d 981, 989–90 (8th Cir. 2018)). The problem here is that Mr. Ryan's opinion is limited to the events surrounding Mr. Rochell's approach of the undercover vehicle—all of which occurred *prior* to the alleged moment of excessive force in question, as framed by this Court and the Court of Appeals. Mr. Ryan's opinions are fatally flawed in that they do not seriously address the relevant period *after* Mr. Rochell slowly and carefully disarmed, stepped away from the rifle, and lay prone on the ground without resistance. It is both telling and disingenuous that the opinion section of Mr. Ryan's report is devoid of any reference to Detective Ross's placement of his Glock against Mr. Rochell's head and Mr. Rochell's unabated claim that Detective Ross said, "I'll blow your f-ing brains out if you ever approach me like that again. Don't you ever approach me like that again."

In other words, Mr. Ryan offers no expert opinions on the pertinent issue of whether national and/or local policing training and standards endorse a police officer pointing a weapon at the head of a suspect and threatening to kill him, when that suspect has dropped his weapon and no longer poses an immediate threat to officer safety. The closest Mr. Ryan comes is his opinion that the force used was reasonable based on the imminent threat posed by Mr. Rochell in light of a concept known as the "constructive continuation of authority." (Doc. 135-1, p. 30). But the Court finds this opinion to be nothing more than *ipse dixit* because it is unsupported by the facts and legal authorities

9

on which Mr. Ryan claims to have relied.

The decision whether to exclude expert testimony is committed to a district court's discretion, subject to the Federal Rules of Evidence, including Rule 702.  *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014).   Rule 702 requires expert witness testimony to be "based on sufficient facts and data," the "product of reliable principles and methods," and the "reliable application" of those principles and methods to the facts of the case.   For the reason explained above, Mr. Ryan's opinions do not meet these requirements and his testimony will therefore be excluded as unreliable, extraneous, and unhelpful to the trier of fact.   To the extent Detective Ross argues that such criticisms go to weight and credibility and not admissibility under Rule 702—such as his broad opinions on when a crime scene should be considered "under control" or how a police officer should appropriately "cover" a threatening individual—the Court finds such testimony excludable under Rule 403, because it would tend to confuse or mislead the jury as to the narrowly defined moment of alleged excessive force, and therefore the probative value of such generally broad opinions would be substantially outweighed by the risk of unfair prejudice to Mr. Rochell.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Exclude Expert Witness (Doc. 134) is **GRANTED**, and Mr. Ryan will not be permitted to testify.

**IT IS SO ORDERED** on this 17th day of September, 2021.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE